**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PLS IV, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-00466-JRG |
| | § | |
| GDC TECHNOLOGY LIMITED, | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

The Court held a Pretrial Conference in the above-captioned case on March 30, 2026 regarding pending pretrial motions, motions in *limine* ("MILs"), and disputed exhibits between Plaintiff PLS IV, LLC ("Plaintiff") and Defendant GDC Technology Limited ("Defendant") (collectively, the "Parties.") (Dkt. Nos. 73, 80, 81, 83, 91-93, 95, 98, 157, 158). This Order memorializes the Court's rulings on the pretrial motions, MILs, and disputed exhibits as announced from the bench and read into the record, including additional instructions that were given to the Parties. While this Order summarizes the Court's rulings as announced into the record during the Pretrial Conference, this Order in no way limits or constrains such rulings from the bench. Accordingly, it is hereby **ORDERED** as follows:

1. **Plaintiff's Motion To Strike portions of the Expert Reports of Michael Sprenger, Ph.D. regarding Invalidity and Noninfringement (Dkt. No. 80).**

The motion was **DENIED**.

On the issue of Dr. Sprenger's alleged claim constructions related to prior positions taken at the Patent Trials and Appeals Board ("PTAB"), the Court made clear that it will preclude references to the PTAB, the *inter partes* review ("IPR") process, the America Invents Acts, and

other related matters.  However, the Court does not find support for Plaintiff's allegation that Dr. Sprenger's report engages in improper claim construction.

On the issue of Dr. Sprenger's alleged claim constructions regarding the order of claim steps, with respect to "identifying" and "receiving," the Court finds that Dr. Sprenger's opinion is a fair explanation as to how a person of ordinary skill in the art ("POSITA") would interpret the claim and ultimately a fact question that can be fairly address on cross-examination.  With respect to the "processing" and "evaluating" steps, the Court will allow these opinions but hold Defendant to its representation that Dr. Sprenger will not criticize the opposing party or opposing witness on this issue.

On the issue of Dr. Sprenger's opinions on security log reports, the Court does not find any problems raised by Plaintiff warrant going so far as to strike the targeted opinions in Dr. Sprenger's report.  Cross-examination will be effective and adequate to remedy any such problems.

On the issue of Dr. Sprenger's anticipation opinions, the Court finds Dr. Sprenger's analysis sufficient under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Those opinions can be tested by vigorous cross-examination.

On the issue of Dr. Sprenger's single-reference obviousness opinion, the Court will permit Dr. Sprenger to explain that the teachings found in the Schneier reference would be obvious to a POSITA so long as his opinion remains cabined solely within that context.

2. **Plaintiff's Motion To Strike Portions of the Expert Opinions and Testimony of Gerald H. Pierce (Dkt. No. 81).**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**.

On the issue of Mr. Pierce's alleged *ipse dixit* opinions, the Court **denied** that part of the motion.  It is up to the jury to determine the extent of comparability between the technologies and methods on which Mr. Pierce opined in his report.

On the issues of Mr. Pierce's alleged fact witness status and his opinions allegedly related to mental state and contract interpretation, the Court **denied** those portions of the motion. The Court does not see how it can fairly hold a person designated as an expert on industry standards to the same kind of rigid, hyper-technical analysis that it would to someone applying scientific principles or principles of economics. So long as Mr. Pierce presents his testimony as an industry expert, relying on his understanding and knowledge based on decades of experience and interaction within the industry, the Court finds no reason to strike such testimony.

On the issue of Mr. Pierce's opinions allegedly related to essentiality, the Court **granted** that portion of the motion and **struck** paragraphs 28, 47-48 of Mr. Pierce's report. The Court finds no real probative value in those opinions. Rather, the Court finds potential for undue prejudice and jury confusion that substantially outweigh any probative value for mentioning such opinions.

3. **Defendant's *Corrected* Motion To Exclude Certain Portions of the Expert Report of Michael Karagosian (Dkt. No. 91).**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**.

On the issue of Mr. Karagosian's opinions concerning awareness of the asserted patents, the Court **denied** that part of the motion. As with Mr. Pierce's industry expert opinions, so long as Mr. Karagosian presents his own opinions on the basis of what he has seen and experienced, and how such experience led to his understanding, the Court will permit such testimony. Should either Mr. Karagosian or Mr. Pierce go beyond that scope and simply state without basis what the other party was thinking, the Court will not permit such testimony.

Relatedly, and on the issue of Mr. Karagosian's opinions concerning the knowledge and intent of Defendant and the exhibitors in Digital Cinema Initiatives, LLC ("DCI"), the Court **granted-in-part** that part of the motion. The first sentence of paragraph 301 in Mr. Karagosian's report reads: "GDC engaged in this conduct beginning at least April of 2018 when the record

3

reflects GDC received notice regarding the patents and related infringement allegations continuing through at least January of 2023." (Dkt. No. 91-1 at ¶ 301). That sentence amounts to a conclusory statement as to when Defendant had notice rather than an explanation of what Mr. Kargosian understood and concluded based on his experience in the industry. The Court finds no other paragraphs rise to that level. Accordingly, the Court **struck** that sentence from paragraph 301 and otherwise **denied** this part of the motion.

On the issue of Mr. Karagosian's opinions regarding Defendant's business judgment, the Court **denied** those portions of the motion consistent with the above reasoning; both Mr. Karagosian and Mr. Pierce may provide industry expert testimony so long as that testimony is based on their respective industry experiences and not merely unsupported conclusory statements.

4. **Defendant's *Corrected* Motion To Strike in Part the Expert Reports of Donald S. Crankshaw, Ph.D. (Dkt. No. 92).**

The motion was **DENIED**.

On the issue of Dr. Crankshaw's opinions regarding notice, the Court will limit the use of the opinions in paragraphs 172-74 in Dr. Crankshaw's report but does not find basis to strike those opinions altogether. Plaintiff may present those opinions only to the extent that Dr. Crankshaw will use the letters and contents contained in those paragraphs as a way to tie unnamed products to the Defendant. However, Plaintiff may not examine Dr. Crankshaw to elicit testimony, nor may he testify, that, as a result of those contents, Defendant received legal notice of infringement.

On the issue of Dr. Crankshaw's opinions allegedly regarding intent to induce infringement, the Court does not find a basis to strike those opinions. Dr. Crankshaw's report does not use the word "inducement" and does not discuss subjective intent. Rather, the targeted opinions discuss technical use based on a significant number of documents, including user manuals and training videos.

On the issue of Dr. Crankshaw's opinions regarding non-domestic GDC blocks, the Court finds that Defendant's arguments go to weight rather than admissibility under *Daubert*. Dr. Crankshaw's opinions appropriately draw support from those of other experts and amount to the other side of a factual dispute that should be submitted to the jury.

On the issue of Dr. Crankshaw's opinions allegedly regarding legal agency, the Court does not find support for Defendant's arguments. Dr. Crankshaw's report does not allege an agency relationship.

On Dr. Crankshaw's opinions with respect to "processing" and "evaluating," counsel for both Parties agreed this was a non-issue at the hearing. (Dkt. No. 174 at 79:11-16, 86:16-21).

On the issue of Dr. Crankshaw's secondary considerations opinions, the Court finds no basis to strike those opinions under *Daubert*. Dr. Crankshaw appropriately relies on opinions from other experts to inform his conclusions.

5. **Defendant's *Second Corrected* Motion for Partial Summary Judgment of Non-Infringement of the '602 Patent (Dkt. No. 95).**

The motion was **DENIED**. The Court determined that there is circumstantial evidence which raises legitimate fact questions and precludes summary judgment under Rule 56.

6. **Defendant's *Third Corrected* Motion for Partial Summary Judgment of Non-Infringement of the '603 Patent (Dkt. No. 98).**

The motion was **DENIED**. The Court determined that factual disputes remain which preclude summary judgment under Rule 56.

7. **Plaintiff's Motion To Strike Portions of the Expert Report of Bruce L. Blacker (Dkt. No. 83).**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**.

5

On the issue of Mr. Blacker's opinions which used the Dolby agreement as a benchmark, the Court **granted** that part of the motion.  The testimony of Dr. Chong alone, notwithstanding Dr. Chong's posture in this situation, is not sufficient without further confirmation or verification.  The Court strikes only the market share adjustment—not the entirety of the Dolby agreement.  Also, Defendant may not supplement Mr. Blacker's report as a result of this ruling.  Rather, the adjustment based on Dr. Chong's testimony should simply drop out of Mr. Blacker's calculation.

On the issue of Mr. Blacker's opinions regarding the royalty calculated from the GDC/Nexguard agreement, the Court **denied** that part of the motion.  The Court finds there is evidence of watermarking being more valuable technology that creates a ceiling for the technical comparability issue in this case.

On the issue of Mr. Blacker's opinions regarding the royalty base, the Court **denied** that part of the motion.  The dispute on this issue is a factual one for the jury to decide.

On the issue of Mr. Blacker's opinions relying on the Intertrust settlement, the Court **denied** that part of the motion.  Although the correspondence subject to this dispute states that it is subject to Federal Rule of Evidence ("FRE") 408, this is a common precautionary practice.  Here, the Court does not find anything within that documentation that establishes a legitimate threat of litigation or controversy that would give rise to actual enforcement of FRE 408.

On the issue of Mr. Blacker's opinions regarding the Christie and Intertrust matters, the Court **denied** that part of the motion.  There is a material difference between those matters being a necessary function of Mr. Blacker's ultimate opinion versus being a reasonableness check that does not ultimately change his underlying analysis and resulting opinion.  Such reasonableness checks have been previously upheld and are not subject to the same level of scrutiny to which the underlying damages calculation and opinion would be subject.

8. **Defendant's *Corrected* Motion To Exclude and Strike Expert Testimony of Stephen E. Dell (Dkt. No. 93).**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**.

On the issue of Mr. Dell's use of the AMC lump-sum settlement and resulting license to generate a baseline per-screen rate, the Court **denied** that part of the motion. The Court finds no basis to exclude such opinions under *Daubert*.

On the issue of Mr. Dell's upward adjustment of that rate, the Court **denied** that part of the motion. Mr. Dell may rely on the *Georgia-Pacific* factors and does not need a precise mathematical basis for upward adjustment.

On the issue that Mr. Dell's baseline per-screen rate allegedly does not comport with the hypothetical negotiation date of 2011, the Court **granted** that part of the motion. The Court directed Plaintiff to have Mr. Dell generate a narrowly targeted supplement that only recalculates the number stemming as the base screen rate from the AMC transactions from the per-dollar value at the time of that transaction and adjusts it backwards in time so that it comports with the 2011 hypothetical negotiation date. The Court expects this should be a very short supplement. Mr. Dell should not need deposition on this supplement, nor should the supplement give rise to a rebuttal report from Defendant's expert.

On the issue of alleged double-counting on the 121 screens, the Court **denied** that part of the motion. The Court does not find Defendant made an absolute showing of double-counting sufficient to strike Mr. Dell's opinions. Rather, Defendant's evidence thereof may be used at trial on cross-examination.

9. **Defendant's Motion To Compel (Dkt. No. 73).**

The Court ordered Plaintiff to produce to the Court documents identified in the disputed privilege logs. The Court has completed *in camera* review of those documents and finds no basis

to overcome Plaintiff's assertion of privilege.  In sum, the withheld documents relate to broad communications between Intertrust and Pretium generally discussing portfolios of patents (some of which that do not even include the asserted patents) for monetization and enforcement purposes. These communications do not impact issues of damages, infringement, or liability as relevant to the above-captioned matter.

Accordingly, the motion is **DENIED.**  Further, Plaintiff is **ORDERED** to send representatives to retrieve the withheld documents **within two weeks** of this Order.

### 10. Parties' Opposed Motions *in Limine* (Dkt. Nos. 157, 158).

a.  *Plaintiff's Motion* in Limine *1: The parties shall be precluded from introducing evident concerning the terms of unaccepted offers made by Intertrust or PLS to GDC to license the patents-in-suit.*

This MIL was **DENIED** in light of the Court's ruling on Dkt. No. 83 (denying-in-part motion to strike portions of Mr. Blacker's report).

b.  *Plaintiff's Motion* in Limine *2: The parties shall be precluded from introducing evidence concerning the effect that a damages award would have on GDC's business or customers, including without limitation that GDC does not earn sufficient revenue to pay the damages PLS is seeking, GDC's profit margins would not permit it to pay the verdict, movie theatres would shut down, moviegoers would face higher ticket prices, or GDC movie theatres would need to lay off employees.*

This MIL was **GRANTED**.  The Court clarified that this ruling does not foreclose Defendant from addressing the competing figures in the damages experts' reports at trial.

c.  *Plaintiff's Motion* in Limine *3: GDC shall be precluded from introducing evidence that any third-party entity, including GDC's customers, are liable for GDC's infringement.*

This MIL was **DENIED**.  The question at the heart of this MIL is inappropriate for motions *in limine* practice and is a substantive issue for the jury to decide.

d.  *Plaintiff's Motion* in Limine *4: GDC shall be precluded from introducing evidence that GDC cannot be liable for infringement because of commercial or industry requirements by third parties, including movie studios, that its products comply with the DCI specifications.*

8

This MIL was **GRANTED** to the extent that it precludes Defendant from arguing, expressly or implicitly, that the industry standards requiring DCI compliance are somehow a defense or excuse to allegations of infringement, particularly induced infringement. The Court clarified that (1) what the industry requires may be presented as a factual matter and not some implicit defense; (2) Defendant must first request leave to present closing argument that GDC is not liable for induced infringement based on third-party industry requirements; and (3) Defendant may not present this argument in opening statements without leave.

> e. *Plaintiff's Motion* in Limine *5: The parties shall be precluded from introducing evidence or making reference to Pretium's unrelated business or status as a private equity firm.*

This MIL was **GRANTED** by agreement of the Parties. The Parties jointly agreed to abide by the following: "The Parties Shall Be Precluded from Introducing Argument, Evidence or Making Reference to Pretium's Unrelated Business or Status as a Private Equity Firm, but Are Allowed to Introduce Argument, Evidence or Making Reference to Pretium as It Relates to PLS IV." (Dkt. No. 167).

> f. *Defendant's Motion* in Limine *1: No evidence stating or suggesting that GDC ("GDC BVI") is liable for any acts of GDC Technology (USA) LLC ("GDC USA") or GDC Digital Cinema Networks USA, LLC ("GDC DCN") or any other GDC BVI subsidiary.*

This MIL was **GRANTED** by agreement of Parties. As agreed, the Parties will present no evidence that Defendant (also known as "GDC BVI") is liable for the acts of any other corporate entity, whether it's related to the GDC parent corporation or not, and there will be no piercing of the corporate veil or arguing of alter ego without prior express leave from the Court. Also as agreed, the theories of agency, direction, and control, and single enterprise are still live issues in this case.

g.  *Defendant's Motion* in Limine *2: No evidence that the accused products necessarily infringe any asserted patent by virtue of compliance with the DCI specifications.*

This MIL was **DENIED** in light of the Court's rulings on *Daubert* and summary judgment.

h.  *Defendant's Motion* in Limine *3: No evidence regarding that GDC's general technical information or support (i.e. manuals, software, updates, website, videos, etc.) induce infringement of either patent without being related to the requirements of infringement of that patent.*

This MIL was **DENIED** in light of the Court's rulings on *Daubert* and summary judgment.

i.  *Defendant's Motion* in Limine *4: No evidence that evidence of sales of media blocks before the damage window is proof of use of that media block during the damage window.*

This MIL was **DENIED** in light of the Court's rulings on *Daubert* and summary judgment.

j.  *Defendant's Motion* in Limine *5: No evidence regarding "Intertrust Technology" or "Intertrust DRM" or similar description without a nexus to the patents-in-suit.*

This MIL was **DENIED**.  Defendant may object under FRE 402 should Plaintiff present testimony or evidence that does not have a sufficient nexus to this case.

### 11. Parties' Exhibit and Witness Disputes

At the March 30 hearing, the Court ordered the Parties to meet and confer over their exhibit disputes in order to appropriately narrow those disputes in light of the rulings from the bench.  On April 6, 2026, the Parties filed a Joint Pretrial Conference Filing ("Joint Filing").  (Dkt. No. 175). In the Joint Filing, the Parties identify several remaining disputes with respect to Defendant's exhibits and witness list.  (Dkt. No. 175-4); (Dkt. No. 174-5).  The Court originally noticed a subsequent hearing on these disputes for May 8, 2026.  However, upon considering the disputes as represented in the Joint Filing, the Court finds such disputes may be resolved on the papers.

Accordingly, the Court **ORDERS** that the hearing set for May 8, 2026 be **cancelled**. Instead, the Court **ORDERS** Plaintiff to file briefing in support of Plaintiff's objections to Defendant's exhibits and witness list.  Such briefing shall be filed on the docket within **two weeks**

of this Order and may not exceed ten (10) pages.  The Court further **ORDERS** Defendant to file its response to Plaintiff's objections (if any), within **seven (7) days** of Plaintiff filing its briefing. Defendant's response may not exceed ten (10) pages.

## So Ordered this

**Apr 17, 2026**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE